UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                               **MEMORANDUM AND ORDER**
- against -                                                     11-CR-722 (S-4) (RRM)

ESVIN LEONEL MONZON-LUNA,

                     Defendant.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

      Defendant Esvin Monzon-Luna has been indicted on one count of sex trafficking of minors in violation of 18 U.S.C. § 1591 ("Count One"), one count of conspiracy to transport illegal aliens in violation of 18 U.S.C. § 1324 ("Count Two"), one count of transportation of illegal aliens for financial gain in violation of 18 U.S.C. § 1324 ("Count Three"), and one count charging a Mann Act violation, 18 U.S.C. § 2423 ("Count Four"). (*See* Fourth Superseding Indictment (Doc. No. 142) ("S-4").) Defendant has moved (1) to dismiss Counts One and Four of S-4, and (2) for a bill of particulars.[1] Defendant has also moved for reconsideration of the Court's Memorandum and Order of November 22, 2013 (Doc. No. 145) denying his motion to suppress statements and other evidence. (*See* Def.'s Mot. for Reconsideration (Doc. No. 149); Def.'s Reply Mot. for Reconsideration (Doc. No. 152).) For the reasons below, defendant's motions are denied.

**A. Motion to Dismiss Counts One and Four**

      First, defendant argues that Counts One and Four of S-4 should be dismissed based on defects in the grand jury proceedings. Grand jury proceedings are afforded a strong presumption

---

[1] Defendant initially directed his motions to the third superseding indictment. (*See* Doc. No. 109.) Following oral argument on these motions, however, the government resubmitted the case to the grand jury, resulting in the filing on November 7, 2013 of the fourth superseding indictment. (*See* S-4, Doc. No. 142.) As discussed on the record during a status conference held on November 25, 2013, defendant orally renewed his motions to dismiss and for a bill of particulars on the same grounds, but directed instead to S-4.

1

of regularity, *see Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), and therefore "[a]n indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits." *Costello v. U.S.*, 350 U.S. 359, 363 (1956). Thus, a district court may dismiss an indictment based on misconduct before a grand jury only where that misconduct: (1) "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions," *United States v. Williams*, 504 U.S. 36, 47 (1992); *see United States v. Capoccia*, 247 F. App'x 311, 314 (2d Cir. 2007); and (2) prejudices the defendant by "substantially influenc[ing] the grand jury's decision to indict," or by creating "grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 256 (1988) (quoting, in part, *U.S. v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring) (internal quotations omitted)). Dismissal of an indictment because of defects in grand jury proceedings is "the most drastic remedy, and thus is rarely used." *U.S. v. Dyman*, 739 F.2d 762, 768 (2d Cir. 1984).

     Here, as discussed more fully below, defendant argues that Counts One and Four should be dismissed because the grand jury was likely given erroneous legal instructions. Although the government is under no obligation to provide the grand jury with legal instructions, *see United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981)); *see also United States v. Kasper*, No. 10-cr-318S, 2011 WL 7098042, at \*7 (W.D.N.Y. Jun. 20, 2011) (citing cases), courts have found error where the government endeavors to provide the grand jury legal instructions but does so incompletely or erroneously. *See Kasper*, 2011 WL 7098042, at \*7; *see also U.S. v. Brito*, 907 F.2d 392 (2d Cir. 1990). Thus, some courts have dismissed

indictments where the prosecutor affirmatively gave erroneous legal advice to the grand jury which led to "grave doubt that the decision to indict was free from the substantial influence of such violations." *See, e.g., U.S. v. Stevens*, No. 10-cr-694, 2011 WL 1033707 (D. Md. Mar. 23, 2011) (dismissing indictment without prejudice where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated wrongful intent); *U.S. v. Peralta*, 763 F. Supp. 14, 19–20, 21 (S.D.N.Y. 1991) (dismissing indictment where prosecutor's instructions to the grand jury did not "merely fail to instruct the grand jury on a question of applicable law," but rather "seriously misstated the applicable law" on constructive possession); *U.S. v. Cerullo*, No. 05-cr-1190, 2007 WL 2462111 (S.D. Cal. Aug. 28, 2007) (explaining that although it was "leery of imposing upon the Government a duty to accurately instruct the grand jury on every relevant legal issue in presenting a case for indictment," because the grand jury repeatedly asked how to distinguish a gift from earnings and the prosecutor repeatedly failed to properly instruct them, the prosecutor committed error that prejudiced the defendant).

In the absence of prejudice, however, courts will not dismiss an indictment, even if the prosecutor's instructions were erroneous. *See, e.g., U.S. v. Fleurissaint*, No. 03-cr-906, 2004 WL 2101922, at *3–4 (S.D.N.Y. Sept. 21, 2004) (noting that there was an "inference that the grand jury was not properly advised by the government as to the law on aiding and abetting" but declining to dismiss the indictment because the defendant was not prejudiced); *U.S. v. Larrazolo*, 869 F.2d 1354, 1358 (9th Cir.1989), overruled on other grounds by *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 799–800 (1989) (declining to dismiss indictment where prosecutor failed to instruct the grand jury on elements of criminal intent and knowledge because the defendant did not show that those instructions "influenced the decision to indict or created a 'grave doubt' that the decision to indict was free from the substantial influence of such a violation."); *Kasper*, 2011

WL 7098042 (W.D.N.Y. June 20, 2011) (finding that prosecutor's failure to advise the grand jury on distinction between income and return of capital was not erroneous and thus this was "not the extraordinary case in which an Indictment should be dismissed for the handling of the Grand Jury.").

Defendant argues that as to both Counts One and Four, the grand jury was improperly instructed as to the *mens rea* requirement pertaining to the age of the victims. Specifically as to Count One, defendant claims the grand jury was "likely charged that it could return a true bill if it found [that the defendant had] a reasonable opportunity to observe" the age of the victim, without an independent finding of knowledge or reckless disregard for the victim's age. (Def. Mem. at 2); *see* 18 U.S.C. § 1591(c) ("In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person . . . the Government need not prove that the defendant knew that the person had not yet attained the age of 18 years.") With respect to count Four, the Mann Act, defendant "believe[s] that the Grand Jury was instructed that it was not necessary that [defendant] have known that the persons being transported were under eighteen years of age." (Def. Mem. at 5.)

In response, the government provided the Court with a partial transcript of the grand jury proceedings underlying S-4, including the full legal instructions given to the grand jury. After *in camera* review of those minutes and consideration of the parties' legal arguments, the Court finds that the grand jury was properly instructed on the law as to Counts One and Four. As such, defendant's motion to dismiss is without merit.

First, with respect to Count Four, defendant's claim was premised on the legal instructions he "believed" were given to the grand jury, suggesting that it was not necessary for

the defendant to have known that the persons being transported were minors. Contrary to defendant's speculation, the grand jury was not so instructed.

With regard to Count One of S-4, charging sex trafficking of a minor, the grand jury was also properly instructed on the *mens rea* element. As the Second Circuit has held in *United States v. Robinson*, the government has "three distinct options" through which it may prove a violation of § 1591(a)(1) predicated on the age of the victim: "(1) that the defendant had knowledge of the victim's underage status; (2) that the defendant recklessly disregarded that fact; or (3) that the defendant had a reasonable opportunity to observe the victim." 702 F.3d 22, 32 (2d Cir. 2012). The Circuit plainly noted that § 1591(c) supplies an "*alternative* to proving any *mens rea* with regard to the defendant's awareness of the victim's age." *Id*. at 32 (emphasis in original). As such, the Circuit held, "the plain reading of § 1591(c), and the only interpretation that preserves any meaning [of the statutory text], is that the provision creates strict liability where the defendant had a reasonable opportunity to observe the victim." *Id*. This, the Circuit found, "gives force to the provision's obvious goal – to reduce the government's burden where the defendant has a reasonable opportunity to observe the victim." *Id*. In so holding, the Circuit "remained mindful" that "criminal statutes are generally construed to include *mens rea* requirements," *id.*, but noted that the presumption does not apply to sex crimes against minors where the "perpetrator confronts the underage victim personally." *Id.* (quoting *U.S. v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994)).

Upon review of the grand jury minutes here, the government provided legal instructions wholly consistent with the instruction upheld in *Robinson*. Thus, defendant was not deprived of his right to indictment by grand jury on this count, as he argues.

Moreover, the grand jury was instructed with regard to each of *Robinson*'s alternative means of proving *mens rea*. As such, and without the facts underlying the indictment, it cannot be said that the instructions, taken as a whole, "substantially influenced the grand jury's decision to indict," or that it gives rise to "grave doubt that the decision to indict was free from the substantial influence of such violations." *See Bank of Nova Scotia*, 487 U.S. at 256. Therefore, defendant has failed to demonstrate that he was prejudiced by the purported error, and there is no basis on which to dismiss Count One.

**B. Motion for Bill of Particulars**

Next, defendant seeks a bill of particulars.[2] "A bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *U.S. v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quoting *U.S. v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999); Fed. R. Crim. P. 7(f). Under such circumstances, a bill of particulars ensures that the defendant is enabled "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574.

However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." *U.S. v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (quoting *U.S. v. Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004)). Furthermore, "[b]ecause a bill of particulars confines the Government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to

---

[2] As noted above, defendant's motion was originally directed at the third superseding indictment. Following the return of S-4, defendant indicated that he was still raising the same motions. Accordingly, the Court treats defendant's arguments as if they were directed originally at S-4.

present its case." *U.S. v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). Thus, courts generally "deny requests for bills of particulars concerning the 'wheres, when and with whoms' of the crime." *Perryman*, 881 F. Supp. 2d at 430 (quoting *Ramos*, 2009 WL 602997, at *1); *see also U.S. v. Barret*, 824 F. Supp. 2d 419, 438 (E.D.N.Y. 2011) (noting that bills of particulars are not discovery devices). In determining whether a bill of particulars is warranted, "[t]he important question is whether the information sought is necessary, not whether it is helpful." *Perryman*, 881 F. Supp. 2d at 430 (quoting *U.S. v. Ramos*, No. 06-cr-172, 2009 WL 602997, at *1 (S.D.N.Y. Mar. 3, 2009)); *see also Barret*, 824 F. Supp. 2d at 438. The decision whether to grant a bill of particulars rests within the sound discretion of the district court. *Bortnovsky*, 820 F.2d at 574.

Here, the Court finds that defendant is not entitled to a bill of particulars. The indictment here clearly states the crimes that defendant is accused of committing and the approximate dates and location that those crimes allegedly occurred. Indeed, defendant does not argue that the indictment fails to apprise him of the charges against him. Rather, defendant argues that, given that this case involves multiple persons, transportations and events, "the government should be required to specify which of them it is relying on to prove the alleged crimes, and provide the particulars as to those persons, transportations and events, so that the defense may effectively meet the proof at trial." (*See* Def.'s Br. (Doc. No. 109-4) at 23 (ECF Pagination).) However, as defendant readily concedes, the government has already provided him with extensive discovery regarding the two victims alleged in the indictment, as well as other victims of the sex trafficking conspiracy. *See Chen*, 378 F.3d at 163 ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means."). To require disclosure of the specific instances of transportation of each victim and the

other particulars sought would constitute a demand for the government's proof at trial. *U.S. v. Albunio*, No. 91-CR-403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1982) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established."). The indictment here explains the essential facts constituting each of the crimes charge, the time frame in which the crime is alleged to have occurred, and the victim involved. This information is sufficient to apprise defendant of the charges against him. "A bill of particulars is not a discovery device and should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *Perryman*, 881 F. Supp. 2d at 430–31. For these reasons, defendant's request for a bill of particulars is denied.

**C. Motion to Reconsider**

Finally, defendant requests reconsideration of the Court's denial of his motion to suppress. (*See* Def.'s Mot. for Reconsideration (Doc. No. 149); Def.'s Reply Mot. for Reconsideration (Doc. No. 152).) Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules address the proper standard for a motion for reconsideration in criminal cases, courts in this district have applied the standard of Local Rule 6.3 when addressing these types of motions. *See U.S. v. James*, No. 02-cr-778, 2007 WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007); *see also U.S. v. Carollo*, No. 10-cr-654, 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011). Local Rule 6.3 directs a party seeking reconsideration to concisely set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Motions for reconsideration are not an opportunity to relitigate an issue already decided by the Court simply based on a disagreement with the outcome. *See Carollo*, 2011 WL 5023241, at *2. Instead, reconsideration is appropriate only where there is "an intervening change of controlling law, the

availability of new evidence not previously available, or the need to correct clear error or prevent manifest injustice." *Id*. at 2. The standard governing a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256–57 (2d Cir. 1995).

Here, defendant does not present any intervening change in controlling law or new evidence. Rather, defendant contends that the Court "erroneously conflated the issue [sic] whether the agents' misrepresentations through which they obtained his initial consent to enter was impermissibly extreme with whether their intent and actions exceeded the scope of the consent they obtained." (Def.'s Mot. For Reconsideration at 1.) Defendant adds that the Court failed to "make factual findings concerning the scope of Monzon-Luna's consent to the agents' *initial* entry," specifically, "the purpose for which he consented to their entry, and the geographic scope of the area he consented to their entering for that purpose." (Def.'s Reply Mot. for Reconsideration (Doc. No. 152) at 1.)

Defendant is mistaken on both scores. In its November 22, 2013 Memorandum and Order denying defendant's motion to suppress, the Court analyzed both issues separately. First, the Court concluded that the ruse utilized by the agents to gain entry did not deprive defendant "of the ability to make a fair assessment of the need to surrender his privacy," and that the subsequent search of the roof landing was within the scope of that initial consent. (Mem. and Order at 10) (quoting *U.S. v. Montes-Reyes*, 547 F. Supp. 2d 281, 291 (S.D.N.Y. 2008)). The Court then went on to find that after the initial entry, defendant made voluntary statements as part of a "cordial back and forth" and "provided consent for the agents to undertake each

9

additional search that they conducted." *Id*. As the Court also found, "it cannot be said that the agents exceeded the scope of consent that they were given." (*Id*. at 10 n.7.) Thus, defendant's arguments in this regard are without merit.

Defendant also maintains that the Court failed "to measure the scope of that initial consent against the agents' actual intentions and actions," relying on *Florida v. Jardines*, ___ U.S. ___, 133 S. Ct. 1409 (2013) (Def.'s Reply Mot. for Reconsideration (Doc. No. 152) at 1-2.) As the government notes, defendant's argument suggests that the agents had an undisclosed subjective "purpose" in entering defendant's room, and that their intent to exceed the scope of defendant's consent renders invalid that consent, their entry and any subsequent search.

However, it is well established that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). In other words, when conducting this inquiry, "the officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006); *see also Kentucky v. King*, __ U.S. __, 131 S. Ct. 1849, 1859 (2011) ("The reasons for looking to objective factors, rather than subjective intent, are clear. . . . this Court has long taken the view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." (quotations omitted)); *U.S. v. Klump*, 536 F.3d 113, 118–19 (2d Cir. 2008) ("[T]he Supreme Court has made clear that the subjective intent of government agents is irrelevant to determining whether a particular search was reasonable under the Fourth Amendment."). Rather, "[a]n action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as

10

long as the circumstances, viewed objectively, justify [the] action." *Brigham City*, 547 U.S. at 404 (quotations omitted). Contrary to defendant's suggestion, *Jardines* did not disturb this well-established Fourth Amendment principle.[3]

Thus, the key is whether it was "objectively reasonable for the [agents] to believe that the scope of the [defendant's] consent permitted [them] to conduct the search that was undertaken." *U.S. v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995)*; Klump*, 536 F.3d at 118–19. Here, the Court found that defendant consented to the agents entering his room in order to look behind the building and that the agents conducted that search. The Court further found that, after completing that initial search, the agents sought and obtained defendant's consent for each additional search that they conducted. Applying the Fourth Amendment's objective reasonableness test to these facts, the Court concluded that the consent was proper, and that the agents did not exceed the scope of the consent that they were given for their initial entry. (*See* 11/22/13 Order at 10 n.7.)

These facts stand in marked contrast to those at issue in *Jardines*, where the officers utilized a drug sniffing dog to attempt to ascertain what was inside a home, exceeding the scope of the implied license of a visitor to approach the front door. 133 S. Ct. at 1416-17. In contrast, as noted above and more fully in the Court's November 22nd Memorandum and Order, the agents here obtained lawful consent to gain entry to defendant's room, obtained additional lawful consent for the additional searches they undertook, and, at all times, cabined their searches to the scope of the consent given. There is no basis to suppress the fruits of those searches.

---

[3] Indeed, the Court in *Jardines* rejected the government's suggestion that it was evaluating the subjective motivations of the officers: "Here, however, the question before the court is precisely whether the officer's conduct was an *objectively reasonable search*. As we have described, that depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered. Here, their behavior *objectively* reveals a purpose to conduct a search, which is not what anyone would think he had license to do." *Jardines*, 133 S. Ct. at 1416–17 (emphasis added).

## CONCLUSION

For the reasons set forth herein, Monzon-Luna's motions to dismiss, for a bill of particulars, and for reconsideration are denied.

SO ORDERED.

Dated: Brooklyn, New York
      January 21, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge